## JULIA KELLY v. SARAH EBY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 23, 1891—Decided March 30, 1891.

1. Although where a loan of money is made to a married woman she is under no obligation of repayment,* yet the moral duty arising therefrom is a sufficient consideration to support an express promise to repay, made after the promisor had become discovert: Hemphill v. McClimans 24 Pa. 367.

2. But such promise, to be available, must be clear and distinct; and it is then enforceable only according to its terms: Chandler v. Glover, 32 Pa. 509. An acknowledgment alone, even if consistent with a promise to pay, will not be sufficient to validate a promise or contract, void when it was made.

3. A promise made by a widow, to repay money alleged to have been loaned to her during coverture, in the words following: " According as I get the money from my boarders, I will give you so much till I pay you the money," is vague and indefinite, and insufficient to support an action.†

(a) In assumpsit against a widow to recover money alleged to have been loaned to her during her coverture, the plaintiff testified that she loaned the money to the defendant, and that a day or two after she called upon the husband of the defendant and obtained from him a note for the money loaned.

(b) The defendant testified that the loan was made to her husband. The husband, then solvent, renewed the note from time to time, and paid the interest, but never paid the principal. There was evidence that the plaintiff exhibited the note to her brother on the day she received it, and knew that it was the note of the husband :

1. In such case, it was misleading and prejudicial to the defendant to instruct the jury that " if the defendant asked and received a loan of money, and, in fact, a note of the husband, then insolvent, was given to a woman ignorant of its contents, that would not change the character of the loan."

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 171 July Term 1890, Sup. Ct.; court below, No. 733 June Term 1888, C. P. No. 3.

---

* At least, prior to the act of June 3, 1887, P. L. 332.

† Cf. Lowrey v. Robinson, post, 189.

On August 29, 1888, Julia Kelly brought assumpsit against Sarah Eby.  Issue.

At the trial, on April 30, 1890, the plaintiff, called in her own behalf, testified:

"I am the plaintiff in the case.  I loaned to Mrs. Eby $350. She asked me to let her have the money to help her out of a difficulty she was in.  I was at my brother's house, 1202 Carlton street.  Mrs. Eby came there and asked me for the money. She said, 'Julia why did you disappoint me, and me in a corner and can't get out of it?'  The next day, I drew the money out of bank and gave it to her.  The money was handed to her in the back room of her house.  No one was present when I handed her the money.  This was the thirtieth day of December, 1884.  She often promised me to pay it.  I saw her several times before Mr. Eby died, and the day before he died, she said, 'Julia, Mr. Eby is going to die, and I will pay you out of the insurance money;' and about two weeks after his death, I asked her about it and she said, 'According as I get the money from my boarders, I will give you so much till I pay you the money.'  She never paid it."

Cross-examined: "I handed the money to Mrs. Eby herself, in the back room of her house.  No one was present. When I went home, my brother told me I ought to get a note, or something to show for it, and a day or two afterwards I went back and went up to the sitting-room.  Mr. Eby was there and he gave me a note for it.  He was sitting at a table in the sitting-room; I don't think any one was present; and he wrote it at the table and gave it to me.  At the end of the year, he paid me the interest on the note and gave me a new one, and when that one came due, he paid me the interest and gave me a new one again."  Note of E. C. Eby, dated January 2, 1888, for $350, payable one year after date, with interest, produced by plaintiff on call, shown witness: "I cannot read or write. I don't know what this paper says.  Mr. Eby gave this to me when he took up the last note.  If this note is paid, I wouldn't claim anything off Mrs. Eby.  All I want is my money.  Mr. and Mrs. Eby were living together, at 248 North Nineteenth street when I loaned the money.  Mr. Eby died the day before the blizzard, in March, 1888."

John Kelly called: "I am the brother of the plaintiff.  I

know Mrs. Eby very well. She came to my house several times. She came the twenty-ninth of December, 1884, and said she wanted to borrow some money. She asked for Julia. She said to her, ' Julia, I'm surprised that you disappointed me to-day, and me in a corner,' and Julia said then that I was the cause of her not drawing the money. I said, ' The book is yours, and you can do as you please to-morrow with it.' Julia went the following morning and drew the money. I did not see her pay the money. The last of December, 1884, Julia told me about the loan, and I asked her if she had anything to show for it. I told her to go back and get a receipt, or a note, or something, for the money; she did so, and came back with a note of Mr. Eby's."

The defendant put the E. C. Eby note in evidence and, being sworn as a witness in her own behalf, testified:

" I am the defendant in this case. I live at 248 North Nineteenth street. Mr. Eby, my husband, died in March, 1888. . . . . This money was not paid to me at all. Julia told me her brother was wanting to get her money, and Mr. Eby said if she had any money he would take it and pay her interest for it. She came in a day or two afterwards and gave the money to Mr. Eby, in the sitting-room. I thought it was only $250. I supposed she got the note at the same time. She was very particular to get a note from Mr. Eby. He wrote the note and handed it to her. I had nothing to do with it. She would not loan me any money. I asked her for a little trifling loan a few days before that, and she refused to give it to me. Mr. Eby, at that time, was in business on Market street, below Sixth. He was a wholesale grocer and was doing a good business. He failed in business about a year before his death. Mrs. Kelly never spoke to me about this matter until after Mr. Eby's death. I did not see her at all just before his death. I was all the time engaged in waiting on him. She had all her dealings with Mr. Eby. He paid her the interest himself, and gave her a new note when the old one fell due." Note of E. C. Eby, dated January 2, 1888, shown witness: " This is all in Mr. Eby's handwriting. This note was not due when the suit was brought. After Mr. Eby's death, Mrs. Kelly spoke to me about Mr. Eby's note, and I said, ' After his business is settled, you will get your money.' I never promised to pay her any money."

Charge of Court below.

Cross-examined: " I have known Julia Kelly for many years. She has often worked for me. I never went to her brother's house to borrow money of her. I went there often, to see Julia and get her to come and do work for me. I never asked her there to lend me any money. I did not ask her there, on the twenty-ninth of December, 1884, to lend me $350, or any other amount. I did not say to her, ' Julia, I'm in a corner, and Mr. Eby will not give me any money.' I asked her casually one time, at my house, to lend me a trifle to pay some bill or other. By a trifle I mean about $25 or so. She wouldn't loan it to me. She paid the money to Mr. Eby, in the sitting-room. He wrote the note and gave it to her. She didn't loan the money to me at all. I hadn't anything to do with it. Mr. Eby paid her the interest, and settled the notes when they came due. Mr. Eby, at that time, was in business as a wholesale grocer. He paid all the bills for the house. I always went to him when I wanted money. I own the house 248 North Nineteenth street. It was in my name. I haven't got anything out of Mr. Eby's business. I never told Mrs. Kelly I would pay her out of the insurance money. I did not see her at all just before Mr. Eby's death. She did see me after his death, and asked me about the note, and I told her if she would wait until Mr. Eby's business was settled, perhaps she would get her money. I never said I would pay her out of board money.'

The case then closing on the testimony, the court, GORDON, J., charged the jury:

This action is brought to recover a sum of money loaned, or alleged to have been loaned, by plaintiff to defendant. The case is one of considerable difficulty as to the legal propositions involved. As to most of them my mind is very decided; but, as to the probable final determination of this case, I am in doubt.

The defendant was a married woman when the plaintiff alleges she went to her and got a loan of $350. She loaned it at defendant's solicitation, according to plaintiff's story, and she received no receipt or note for it at that time. When she came back, her brother instructed her to get a note, and she went for that purpose some days after, and she saw defendant's husband and he gave plaintiff his note. The plaintiff is

Charge of Court below.

a woman and incapable of reading or writing, and nothing was said about the contents of the paper; she merely received it. Subsequently, upon two occasions when the notes became due, at each interval she collected the interest, which was paid by the husband. She received another note, and to-day has it in her possession, a note signed by the husband.

It is undoubtedly the law that a married woman, at that time, could not make a valid contract such as this, and that if any married woman could induce another to loan her money it could never be recovered against her, unless afterwards the married woman, becoming sole by the death of her husband, revived and assumed the indebtedness. Undoubtedly, when, according to the plaintiff's story this loan was made, there could be no recovery, and if, then, nothing subsequent happened, there could be nothing recovered now.

It is alleged by the plaintiff, however, that she went to the defendant at the time of the death of her husband, and defendant then promised to pay. [For the purpose of this case, I instruct you that if you should find that fact is true, that the loan was made to her in the first instance, and that the note was received in ignorance of its contents, from defendant, and after the death of the husband she promised to pay it, that was a sufficient obligation upon which she could be now sued for the original indebtedness.] [1]

[There are two defences of law. One is, that the note was taken from the husband. Gentlemen, if the defendant asked and received a loan of money, and, in fact, a note of the husband, then insolvent, was given to a woman ignorant of its contents, that would not change the character of the loan.] [2] The other defence is that it was a loan to the husband; that it was intended and known to be such; and that is the only defence in this case you can pass upon. [If you believe plaintiff's story as to how she loaned the money originally, and the subsequent occurrences relating to it, I instruct you, under the evidence, she is entitled to recover.] [3] If, on the other hand, you believe the money was loaned to the husband originally and intended to be loaned to him, then your verdict should be for defendant.

The defendant requests the court to charge:

1. If the jury believe from the evidence that at the time of

Arguments.

the alleged loan, the defendant, Sarah Eby, was a married woman and living with her husband, then the plaintiff is not entitled to recover here and your verdict should be for the defendant.

Answer: Refused.[4]

2. If the jury believe from the evidence that when the loan was made, the plaintiff received for the said loan the note of E. C. Eby, defendant's husband, which note was afterwards taken up by said E. C. Eby at maturity, then the plaintiff is not entitled to recover here, and your verdict should be for the defendant.

Answer: Refused.[5]

4. Under the evidence in this cause, the verdict should be for the defendant.

Answer: Refused.[6]

—The jury returned a verdict in favor of the plaintiff for $419.85. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1-3. The portions of the charge embraced in [ ] [1 to 3]
4-6. The answers to the defendant's point.[4 to 6]

*Mr. Frederick Gaston* (with him *Mr. John E. Faunce*), for the appellant.

Counsel cited: (*a*) Phila. etc. R. Co. v. Alvord, 128 Pa. 42. (1) Lawson v. McCartney, 104 Pa. 356; Painter's App., 18 W. N. 441; Kensington Bank v. Patton, 14 Pa. 479; LaForge v. Jayne, 9 Pa. 410; Chandler v. Glover, 32 Pa. 509; Curtin v. Patten, 11 S. & R. 305; Hinely v. Margaritz, 3 Pa. 428; Heugh v. Jones, 32 Pa. 432; Wolbach v. Building Ass'n, 84 Pa. 211; Guyer v. Harrison, 103 Pa. 473; Sellers v. Heinbaugh, 117 Pa. 218; Berger v. Clark, 79 Pa. 340. (3) Hall v. Hurford, 2 Clark 292; Licey v. Licey, 7 Pa. 251; Hays v. McClurg, 4 W. 454; Brown v. Scott, 51 Pa. 364.

*Mr. J. Henry McIntyre*, for the appellee.

Counsel cited: Brown v. Bennett, 75 Pa. 420; Trout v. McDonald, 83 Pa. 144; Leonard v. Duffin, 94 Pa. 218; Kennedy v. Ware, 1 Pa. 445; Hawkes v. Saunders, Cowp. 289; Hare on Cont., 262, 269, 294; Smith on Cont., *308; Baeder v. Barton, 11 W. N. 165; Brooks v. National Bank, 125 Pa. 394.

Opinion of the Court.

OPINION, Mr. JUSTICE McCOLLUM:

The claim of the appellee, briefly stated, is that on the thirtieth of December, 1884, she loaned three hundred and fifty dollars to the appellant, who was then a married woman residing with her husband; and that about two weeks after her husband's death, in March, 1888, she referred to the loan and said to the appellee: "According as I get the money from my boarders, I will pay you so much till I pay you the money." The appellee testified that she handed the money to the appellant in the back room of the latter's house, when they were alone; that a day or two afterward she called upon the husband of the appellant, and obtained from him his note for the moneys payable in one year, with interest; that at the expiration of the year he paid her the interest and gave her a new note; that while he lived he annually paid the interest and renewed the note, and that the last note, which was given on the second of January, 1888, and payable one year thereafter, with interest, she still holds. There is no evidence that anything was said by the parties, at the time of the alleged loan, about the payment of interest or the return of the principal; and there is nothing whatever to fix its terms except the subsequent dealings of the appellee with the husband of the appellant respecting it. The only corroboration of the story of the appellee in relation to the loan is found in the testimony of her brother, to the effect that the appellant, on the twenty-ninth of December, 1884, called on him, and inquired for his sister, and said that she wanted to borrow some money. All of this evidence is distinctly and in detail denied by the appellant, who says that the loan was made by her husband at the request of the appellee, and she is strongly corroborated in her statement by the admitted course of dealing between the parties for the next three years.

The learned judge instructed the jury that the appellee was entitled to recover, if they believed her story as to the loan and the promise made by the appellant after the death of her husband. It is contended that the portions of the charge embraced in the first and second specifications of error were misleading as to the facts, and injurious to the appellant, in that they suggested the perpetration of a fraud on the appellee with reference to the note. It is clear from the evidence produced by her

that she exhibited the note to her brother on the day she received it, and that she knew it was the note of the husband for the money she claims she loaned to the wife. There was no offer to prove that the maker of the note was insolvent at the time of the alleged loan, and the uncontradicted evidence is that he was then, and for two years after, doing a good business as a wholesale grocer. It is not pretended that the appellee at any time requested the appellant to give her a note or receipt for the money, or that she was induced by any misrepresentation or artifice to accept the note of the husband. The undisputed fact is that she applied to him for a note for the money, and that she obtained it. As there was nothing in the testimony to justify the inference that " a note of the husband, then insolvent, was given to a woman ignorant of its contents," the charge was misleading in this respect, and prejudicial to the appellant.

The fact that the husband gave his note for the money, was corroborative of the claim of the appellant that it was loaned to him, and was for the consideration of the jury; but it was not a sufficient answer to the suit, if the appellant borrowed the money, and after the death of her husband, gave to the appellee a distinct and unequivocal promise to pay it. If the loan was made to the appellant, as claimed, she was under no legal obligation to pay it; but the moral duty arising therefrom was a sufficient consideration to support an express promise made after coverture : Hemphill v. McClimans, 24 Pa. 367. The promise, to be available, must be clear and distinct, and it is then enforceable only according to its terms. This is the rule with reference to promises relied on to remove the bar of the statute of limitations; and it applies with equal force and greater reason to promises set up to validate the contracts of infants and married women : Chandler v. Glover, 32 Pa. 509. Acknowledgments alone, if consistent with a promise to pay, may remove the bar of the statute, but they will not validate a promise or contract that is void. An express promise is necessary, and the action must proceed upon it. The promise testified to by the appellee was not absolute and unqualified; it was at most a promise to pay from board money, when received by the promisor. If it was sufficiently distinct and clear, there could be no recovery upon it, without proof that

the promisor had received the fund from which she proposed to pay. But was the promise intelligible, and such as could be enforced? It was not a promise to apply in payment of the loan all the money she received from her boarders, nor to appropriate a defined portion of it to that purpose. It was vague and indefinite, and, in our opinion, insufficient to support an action. The first, second, third and sixth specifications of error are sustained, and the fourth and fifth specifications are dismissed.

> Judgment reversed, and venire facias de novo awarded.

