Vineland National Bank and Trust Company, Appellant, *v.* Kotok.

Argued September 28, 1937.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Michael C. McManus*, with him *M. T. McManus*, for appellant.

*Herman Eisenberg*, with him *A. Harry Levitan*, for appellee.

OPINION BY KELLER, P. J., December 17, 1937:
Plaintiff appeals from the order of the court below

discharging its rule for judgment for want of a sufficient affidavit of defense in an action of assumpsit.

The action was on a promissory note for $750 signed by the defendant, Sadie Kotok, dated July 13, 1936, payable thirty days after date, to the order of the plaintiff, which it was averred the defendant refused to pay on the due date though requested so to do.

The affidavit of defense admitted that defendant had made and delivered to plaintiff the note in suit but denied liability therefor because of averments, substantially as follows: She denied that *she* had received any value for said note and averred that the note was the last renewal of a note for $775 which, on February 11, 1936, she had made and delivered to the plaintiff bank, at its request, to *replace* a note executed by her husband, Frank Kotok, on which she had been indorser; that her husband, Frank Kotok, died on January 26, 1936, at which time the bank held his note for $785 indorsed by her; that said $785 note was the last renewal of a note, given the plaintiff bank on or about July 10, 1935, *in place* of two notes for $500 and $400 respectively, which the said Frank Kotok, during the years 1930 to 1932, had made, executed and delivered to the plaintiff bank, with the endorsement of one Meyer Kotok; that on or about July 9, 1935, the said Meyer Kotok, the endorser on said notes, had filed a voluntary petition in bankruptcy, and was duly adjudicated a bankrupt on July 10, 1935; that on said dates the sums of $500 and $400 respectively had not been repaid to the bank, but as a result of said bankruptcy proceedings Meyer Kotok was discharged of his obligations on said notes to the plaintiff bank; that immediately subsequent to said adjudication in bankruptcy, the plaintiff bank requested of Frank Kotok, the maker of said notes and the husband of defendant, that he execute a renewal note for the said two notes, less payments which he had made on account, and that he secure a new endorser to *replace*

the endorsement of Meyer Kotok, and that "in compliance with the said request of the plaintiff bank, the said Frank Kotok executed one renewal note in place of the said two notes, and the defendant, Sadie Kotok, endorsed said note and said note was then delivered by the said Frank Kotok to the plaintiff bank in renewal of the aforesaid two notes. Said note was renewed by the plaintiff bank from time to time until on or about January 26, 1936, the date of the death of the original maker, Frank Kotok." She averred that she had received no part of the $900 originally lent to her husband; and that "at the time she endorsed the note in place of the bankrupt, Meyer Kotok, the said Frank Kotok, the maker of the note, was himself hopelessly insolvent."

We are of opinion that the affidavit was insufficient to prevent judgment for the plaintiff.

The original notes for $500 and $400, respectively, discounted by the plaintiff were valid obligations of both the maker, Frank Kotok, and the endorser, Meyer Kotok. As the affidavit of defense avers a delivery of the notes by Frank Kotok to the plaintiff bank, Meyer Kotok was apparently accommodation endorser, but they were both liable to the bank, as maker and endorser respectively, on the notes and on all renewals of them to the date of the discharge in bankruptcy of the endorser, Meyer Kotok. Then, at the request of the bank, the maker, Frank Kotok, executed one note "in renewal" and "in place" of the said two notes and secured the endorsement of his wife, Sadie Kotok, to "replace the endorsement of Meyer Kotok." This note was renewed from time to time, as it fell due, until the maker, Frank Kotok, died, and after that his widow, the defendant, executed her own note to "replace" her husband's note, endorsed by her, and subsequently renewed it from time to time, the last renewal being the note in suit.

Under the law of this State the endorsement of Sadie Kotok on the notes of her husband imposed no enforceable liability on her, for our Married Persons Property Act of June 8, 1893, P. L. 344, while enlarging the powers of a married woman to contract and granting her generally the same right and power as an unmarried person to acquire, own, possess, control, use, lease, sell or otherwise dispose of her property, etc., expressly provides inter alia, that she may not become accommodation endorser, maker, guarantor or surety for another. As Sadie Kotok was a married woman and her endorsement of her husband's note was for his accommodation, it was not, under our law, enforceable against her— not because of want of consideration, but because our law expressly provides that while she is a married woman she may not become accommodation endorser for another. Had she been a single woman the note would have bound her, for the benefit to the maker, Frank Kotok, in renewing the note, thus extending its maturity, and accepting it "in place" of his notes on which Meyer Kotok was endorser, and the corresponding detriment to the bank in extending the time of payment and "replacing" the notes by the new renewal note, constituted a sufficient consideration under the Negotiable Instruments Law of May 16, 1901, P. L. 194. That act provides in section 25, (56 PS sec. 62), "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time;" and in section 29 (56 PS 66, 67), "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only

an accommodation party." "If the promisee has suffered any detriment, however slight, or, though he has suffered no real detriment, if he has done what he was not otherwise bound to do, in return for the promise, he has given a consideration and the court will not ask whether the promisor was benefited;" *Mikos v. Kida,* 314 Pa. 561, 563, 172 A. 101.

Some controversy has arisen as to whether the acceptance of a note as *collateral security* for a pre-existing debt constitutes value, or whether it must be accepted in payment of the pre-existing debt in order to constitute value. The recent decision of the Supreme Court in *South Side Bank of Scranton v. Raine,* 306 Pa. 561, 160 A. 446, supports the broader view. But we are not now especially concerned about this point, for the affidavit of defense does not aver that the note endorsed by Sadie Kotok was given as security for the notes endorsed by Meyer Kotok. On the contrary, it distinctly avers that the note was given "in renewal of" and "in place of" the notes endorsed by Meyer Kotok, and these expressions are inconsistent with the idea of "security," and import "payment." Hence we may regard it as established that if Sadie Kotok had been a single woman she would have had no defense to the notes which she endorsed for Frank Kotok and which he delivered to the bank. Whether the maker was solvent or insolvent would not affect that liability: *Beed v. Beed,* 222 N. W. 442, 443, 207 Iowa 954. He never was discharged of liability as a bankrupt, nor does it appear from the affidavit of defense that his note was ever dishonored. However, as Sadie Kotok was a married woman at the time she became accommodation endorser on the note, liability could not be enforced against her.

But after the death of her husband, she gave her own note in the sum of $775 "to replace the aforesaid note" executed by her husband and endorsed by her for his accommodation, and "commencing on or about Febru-

ary 11, 1936, she executed a renewal note and delivered same to the plaintiff bank every month until July 13, 1936 when she executed and delivered to the plaintiff bank the note upon which the within suit was brought."

Whatever may be the rule in other jurisdictions, in this state it has been held for many years that a woman, after the death of her husband, may legally bind herself by a note given in renewal of a note, on which she was accommodation maker or endorser, and which was during her coverture legally invalid as to her—the moral consideration being sufficient to support the renewal note made after her husband's death.

Thus as early as *Hemphill v. McClimans,* 24 Pa. 367, 371 (1855) it was held that a woman, who after securing a divorce, renewed a promise to pay for work done for her son, which was legally invalid when made, because she was then a married woman, was bound by her renewal promise made after she was divorced. Mr. Justice BLACK, speaking for the court, said: "But the rule is a very familiar one, that an existing moral duty, not enforceable by law, is a sufficient consideration for an express promise to perform that duty." In *Brooks v. Merchants Nat. Bank,* 125 Pa. 394, 17 A. 418, it was held that promissory notes given subsequently to the Married Women's Act of June 3, 1887, P. L. 332, by a firm of which a married woman was a member, in renewal of notes given by the same firm prior to said act, and unenforceable as to her when made, were valid as against the married woman, the moral obligation to pay the original notes being a sufficient consideration for the renewals. In *Holden v. Banes,* 140 Pa. 63, 21 A. 239, it was held that the contract of a married woman to pay a valid debt of her husband out of her separate estate, creates a moral obligation, which is a sufficient consideration to support a bond and mortgage for the same debt, executed after her husband's death. In *Rathfon v. Locher,* 215 Pa. 571, 64 A. 790, a married woman,

at the request, and for the accommodation, of her husband, who was president of a bank, gave him two notes, which he discounted at the bank, he receiving the entire proceeds. The notes were given to raise money for the husband—she received none of it—and the bank knew this. After her husband's death, the wife signed a renewal note, for the amount of the two notes. In an action upon the note brought by the receiver of the bank, her affidavit of defense which set up, in great detail, that she was only an accommodation maker of the original notes, was held insufficient, on the ground that her notes given when a married woman, although legally invalid, imported a moral consideration, which was sufficient to support a renewal note given by her after her husband's death. In *Geiselbrecht, Executrix, v. Geiselbrecht,* 8 Pa. Superior Ct. 183, it was held that the execution of a judgment note by a married woman, jointly with her husband, although, at the time, invalid as to her, created a moral obligation, which was a sufficient consideration to support an amicable revival thereof by the woman after the death of her husband. See also, *Leonard v. Duffin,* 94 Pa. 218; *Kelly v. Eby,* 141 Pa. 176, 21 A. 512.

A precedent debt, though unenforceable by reason of the expiration of the period fixed by the statute of limitations, or infancy, or a discharge in bankruptcy, is generally held a valid consideration for a subsequent promise; and in states, such as Pennsylvania, which have Married Women's Property Acts, securing to married women their individual property, personal as well as real, and making their right to enter into contracts general and their limitation upon such right exceptional, there is less reason for adhering to the distinction sometimes observed in the English decisions based on the common law, denying to a woman the power to make a valid promise to pay a precedent debt which was unenforceable because it was incurred during her

marriage. See note of Samuel Dickson, the eminent Philadelphia lawyer, to the case of *Flight v. Reed*, 1 Hurlstone & Coltman 703, on page 718 of the American Edition of T. & J. W. Johnson (1865). See also, *Cawthorpe v. Clark*, 138 N. W. 1075, 173 Mich. 267; *Mohn v. Mohn*, 164 N. W. 341, 181 Iowa 119; *Schmid v. Haines*, 178 A. 801, 805 (N. J.); *Haffner v. Seiling First Nat. Bank*, 5 P. (2d) 351, 152 Okla. 90; *Morrison v. Whitfield*, 46 Pa. Superior Ct. 103.

The case of *Widger v. Baxter*, 76 N. E. 509, 190 Mass. 130, relied on by the court below, holds that a note given by a husband and wife, after his discharge in bankruptcy, as *security* for a debt previously existing, is not valid, as against her, in Massachusetts unless there is a new consideration; but the opinion distinctly states (p. 510) that "A wife's note, given to a third person in payment of her husband's debt, is for a valuable consideration; but a note given as security for such a debt, previously existing, is not."

The order is reversed and the record is remitted to the court below, pursuant to the Act of April 18, 1874, P. L. 64, with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.