VALENTINE CLARK CO. v. ALLEGHENY CITY.

(Circuit Court, W. D. Pennsylvania. February 1, 1906.)

No. 25.

1. MUNICIPAL CORPORATIONS—RATIFICATION OF UNAUTHORIZED CONTRACT—POWER UNDER PENNSYLVANIA STATUTE.

Notwithstanding the provisions of the statutes of Pennsylvania governing cities of the second class which require contracts for public improvements to be let to the lowest bidder after notice and to be based on and be within prior estimates of the cost, a claim for materials furnished a city for a public work under a contract made without such formalities, because of the urgency of the demand for such materials, may be legalized by a joint resolution passed by two-thirds vote of the councils and approved by the mayor, recognizing its validity and directing its payment, under Act May 23, 1874 (P. L. 232) § 5, which provides that "no ordinance shall be passed except by a two-thirds vote of both councils and approved by the mayor * * * providing for the payment of any claim against the city without previous authority of law."

2. SAME—APPEARANCE BY CITY CONTROLLER—CITY SOLICITOR.

The city solicitor, under the direction of councils, according to the Pennsylvania statutes, is the duly appointed representative of the municipality in legal affairs; and it is to say the least doubtful, therefore, whether the city controller is entitled to appear on behalf of the city in an action against it and contest the plaintiff's claim.

W. A. Way, for plaintiff.
Thomas P. Trimble, for defendant.

ARCHBALD, District Judge.[1] This is an action to recover the price of certain cedar poles sold and delivered by the plaintiffs to the defendant in June, 1903, on an order given by Edward J. McIlvaine, director of public works of said city. These poles were designed to be used for carrying an electric line to run a pumping station, whereby water might be supplied to a certain section of the city for which there had been an urgent demand for some time, and, in view of this urgency, were ordered by the director of public works without a previous ordinance authorizing the purchase, or any advertisement or public letting. Subsequently, however, the councils of the city, by joint resolution duly passed September 17, 1903, and approved by the mayor, recognized the validity of the bill, amounting to $2,033.75, and directed the city controller to execute a warrant therefor, making the same payable out of the proceeds of certain water bonds previously issued. The controller refused to follow the direction of councils, maintaining that their action was illegal, and thereupon the plaintiffs brought this suit.

When the case was called for trial, Mr. Porter, the city solicitor, appeared, but said he had no defense to it, having advised the director of public works as to purchasing the poles, and also suggested the passage of the joint resolution of councils providing for payment. It was stated that the controller had employed special counsel to contest the case, who had entered an appearance and plea, but he was not present in court, and an effort by the clerk to reach and advise him

[1] Specially assigned.

that the case was called was unsuccessful. A just cause of action having been apparently shown, the jury were directed to give a verdict in favor of the plaintiffs for the full amount of their claim. Application is now made for a new trial by counsel for the controller, who has satisfactorily accounted for his absence at the trial, on the same grounds as advanced by the controller, that no valid purchase could be made without a previous ordinance duly authorizing it, followed by advertisement and letting to the lowest responsible bidder, and an appropriation providing for payment, and that the attempted approval by councils afterwards was not within their power, and was therefore of no binding effect upon the city.

It is, to say the least, doubtful whether the city controller is entitled to appear on behalf of the city and contest the plaintiffs' claim. The city solicitor, under the direction of councils, is the duly appointed representative of the municipality in legal affairs. Act March 7, 1901, art. 9 (P. L. 20, 29); City v. Board of Publication (Pa.) 9 Phila. 499; City v. Strawbridge, 4 Wkly. Notes Cas. 215; City v. Trustees, 15 Wkly. Notes Cas. 477. And it would result in great confusion if other officials could intervene and interfere as they saw fit in the conduct of a case committed to his care. At the same time, as an officer charged within certain limits with the important duty of seeing that the expenditure of the city's money is not made without due warrant of law, the suggestions of the controller, through his counsel, are entitled to respectful consideration, and, if it now appeared that a recovery had been had which was clearly against law and justice, I should not hesitate to reopen the case and award a new trial.

Having regard, however, to all that has been said in that behalf, I see no occasion for disturbing the verdict. The plaintiffs' claim is a just one, whatever is to be said of it as a matter of strict law, and I would have to be convinced to the contrary before undoing what has been done. The poles were furnished at a fair price, which is alleged to have been less than the city had been previously paying, and while, as it turned out, there was no such urgency as was assumed, and the poles were not used until a considerable time afterwards, the supposed urgency was a reason at the time for dispensing with the ordinary formalities, and the city made use and had the benefit of them in the end. There was thus a moral obligation to pay for them, and, justice having been accomplished, the verdict should be allowed to stand.

But, whatever may be said of the liability of the city at the outstart, by the resolution of councils approved by the mayor the plaintiff's claim was fully legalized, and, even if the case were now open and undisposed of, the defense which is sought to be made to it could not be sustained. It is no doubt true that, by the act governing cities of the second class in Pennsylvania, of which the city of Allegheny is one, "all contracts relating to city affairs shall be let to the lowest responsible bidder, after reasonable notice," and "when the contract exceeds two hundred and fifty dollars, such notice shall be by advertisement"; also that "every contract for public improvements shall be based upon estimate of the whole cost, furnished by the proper

officer through the department having charge of the improvement, and no bid in excess of such estimate shall be accepted," and that, the liability of the city thereon shall be limited by the amounts which shall from time to time be appropriated therefor. Act March 7, 1901, art. 15 (P. L. 20, 36) ; Act June 20, 1901 (P. L. 586, 592). These and other formalities, which need not be enumerated, are unquestionably necessary to bind the city under ordinary circumstances, and it is the duty of the controller to see that they have been complied with before approving a warrant on the treasurer for payment.

It is provided, however, on the other hand, by Act May 23, 1874 (P. L. 232) § 5, relating to the government of cities generally, with regard to the payment of claims not having an original legal basis:

"No ordinance shall be passed, except by a two-thirds vote of both councils and approved by the mayor, giving any extra compensation to any public officer or servant, employé, agent or contractors, after services shall have been rendered, or contract made, nor providing for payment of any claim against the city without previous authority of law."

While negative in form, there can be no question as to the enabling character of this enactment, and that it is applicable here, provided only it is consistent with the special provisions of the act of 1901 which have been referred to.

It is contended by counsel for the controller that it is not, but I see no reason why both should not stand. The act of 1874 contains substantially the same restrictions as the act of 1901; it being provided (section 6) that all materials furnished and work to be performed shall be by contract to be given to the lowest responsible bidder under such regulations as shall be prescribed by ordinance, which is the essence of that which is insisted on here. Both provisions being thus found side by side in the same act, they could not have been regarded as inconsistent by the Legislature which enacted them, and they must be absolutely and irreconcilably at variance, in view of this, to be now so pronounced. It may be that the sanctions supposed to have been set about the incurring of obligations and the expenditure of the public moneys by municipal authorities may to a certain extent be thus weakened. But the whole subject of city government is lodged with the Legislature, and we must be content with what they see fit to provide.

There was abundant basis, in the present instance, in the benefits which the city had received, for the action of councils, which was unanimous and had the approval of the mayor, by which the purchase of the poles was ratified and payment directed to be made. A city may recognize a moral obligation. Bailey v. Philadelphia 167 Pa. 569, 31 Atl. 925, 46 Am. St. Rep. 691. And there was considerably more than that here. The refusal of the controller, therefore, to issue a certificate in favor of the plaintiffs, by which payment from the city could be obtained, was not justified. Commonwealth v. Philadelphia, 176 Pa. 588, 35 Atl. 195. And the reasons given for it which are repeated here cannot be sustained. By the resolution of councils the plaintiffs have a valid claim against the city, whatever may be said of it before, and the verdict which they have recovered must be allowed to stand.

The rule for a new trial is discharged.