## Stebbins *versus* The County of Crawford.

1. A moral obligation is sufficient to support an assumption to pay a debt barred by a report of county auditors which was properly filed and had become a judgment, and from which no appeal was taken.

2. S. was the county treasurer of Crawford county for the year 1874. He settled his accounts, and the auditors' reports thereon were properly filed in the prothonotary's office on the 3d of February 1876, and became a judgment which was not appealed from by any of the parties interested. In January 1878 it was discovered that there were errors in these accounts to the extent of $1717.76, and S., who had no knowledge of these errors prior thereto, admitted them and acknowledged the mistake to that amount to the clerk of the county commissioner, and to the county treasurer, and promised to them to pay the same. The county brought assumpsit upon this promise. *Held*, affirming the court below, that she could recover.

3. It was objected that the promise being made to the clerk of the commissioners and the county treasurer, it was therefore not binding on the defendant. *Held*, that as both were county officers, there was no reason why the assumption to either of them would not be good, especially to the latter, who was the only one who had power to receive the money and receipt therefor.

November 24th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

11 NORRIS—19

| 92 | 289 |
|----|-----|
| 167 | 573 |

| 92 | 289 |
|----|-----|
| L 19 SC | 556 |

| 92 | 289 |
|----|-----|
| e207 | 135 |

| 92 | 289 |
|----|-----|
| f37SC | 272 |

[Stebbins *v.* County of Crawford.]

,Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1878, No. 324.

This case is stated in the following opinion of the court below, Church, P. J.:

"This was an action of assumpsit, brought by the County of Crawford against Benjamin F. Stebbins, a former treasurer of the county, to recover a balance of $1717.76 of public moneys remaining in his hands at the end of the year 1874. The action is founded upon an alleged express promise to pay the same, after a discovery had been made by the county officials and the treasurer, in January 1878, that the county auditors had made a mathematical error in settling the account of the treasurer for the year 1874, by neglecting to carry over against the treasurer $1000 in one place, and $717.76 of road and school funds in another place. After the suit was brought, plaintiff entered a rule of reference under the compulsory arbitration law. Whereupon the defendant, under the provisions of the Act 6th April 1870, Pamph. L. 948, 1 Purd. Dig., p. 80, pl. 20, *et seq.*, elected to have a legal arbitration, and the cause was then submitted to an arbitrator learned in the law, and the cause was then proceeded with, tried, and an award made thereon in full accordance with the provisions of that act, for the plaintiff, for the sum of $1975.32, being the amount of the above-mentioned errors with interest thereon. Judgment nisi was entered on the award, and within the time allowed by the act, exceptions were filed to the decision and ruling of the law in the case, and these exceptions are now heard in this court, as in the nature of a writ of error to it.

"There are fifteen separate exceptions filed to the reception of evidence, answers to points and rulings of law, but they can readily be resolved into one, or at the most, two, which will be noticed together. It will be perceived that this is not an action of debt or for money had and received, or on an implied promise to pay, but as was before said, an express promise to pay a specified sum. On the trial, plaintiff offered in evidence the auditor's reports for the years 1874 and 1875, for the purpose of showing that error was committed against the county, and in favor of the treasurer, of $2056.06 for the former year, and of $2011.75 for the latter year. These offers were proposed to be followed by evidence of an admission of the errors, and a promise by defendant to pay the same. To these offers defendant objected on the ground that the auditors' reports had passed into judgment, and were final and conclusive, and not having been appealed from, could not be attacked by the kind of evidence offered, nor in this form of action, and the promise, if ma le, had no binding effect, because there was no legally existing debt, and it is not binding for want of consideration.

"The legal arbitrator overruled the objection, with the under-

[Stebbins *v.* County of Crawford.]

standing that no evidence was to be introduced of any errors, except such as could be followed with proof of an acknowledgment and promise to pay the same by the defendant. There was no error in admitting these offers, with the qualifications annexed, by the arbitrator to his ruling, and when he comes to make up his award in the form of a special verdict, he expressly 'rejects from the case all evidence of errors in auditor's reports offered in this case not followed by evidence of a subsequent acknowledgment and promise to pay the same by the defendant.'

"It will thus be seen, that the legal arbitrator was not unmindful of the Act of 15th of April 1834, defining the functions of county auditors, and giving legal effect to their respective reports, but kept the same steadily in view, together with the adjudication of the courts thereon, as found in Blackmore *v.* Allegheny Co., 1 P. F. Smith 160; Northumberland County *v.* Bloom, 3 W. & S. 542; Northampton County *v.* Yohe, 12 Harris 305, and many kindred cases. This sufficiently appears in the legal arbitrator's answer to defendant's first and second points, wherein is affirmed the doctrine, that county auditors' reports are conclusive and binding upon the parties; and that the Act of 1834, in its provisions for the settlement and adjustment of the accounts of county treasurers, must be strictly pursued; and that no action at common law can be maintained, to re-settle said accounts or to correct errors therein. That the legal arbitrator based his award upon other and different grounds, also appears from the fact, that he only gave an award to plaintiff for about half her claim; that is, for the errors of one year upon which the express promise to pay was made, and rejected entirely the claim for errors for the year that lacked such promise. The Act of the 6th of April 1870, hereinbefore noted, defining the duties of the legal arbitrator, provides, inter alia, that 'it shall be the duty of the arbitrator to conduct the trial, and at the conclusion thereof, find and report the facts of the case in the form of a special verdict, together with the exceptions taken during the trial to the admission or rejection of evidence, and the points of law made by the parties; and his decisions or rulings thereon, and his award or finding in the case.' This has been very fully and completely done by him. In the special verdict he finds as facts, that the auditors, in their report of 1875, committed two errors, which appear upon the face of the reports in evidence, to wit: A mistake of $1000 against the county, in carrying over the balance remaining in the hands of the treasurer at the end of the year 1874; and also a mistake of $717.76, in not carrying over and in not charging the amount of road and school funds in the hands of the treasurer, at the end of the year 1874; by which two mistakes, the defendant, then treasurer of Crawford county, was charged with $1717.76 less than was in his hands at the beginning of 1875, and was enabled to retain that amount of the money justly

[Stebbins *v.* County of Crawford.]

belonging to the county; and that the auditor's report of 1875, containing the said errors, was properly filed in the prothonotary's office on the 3d of February 1876, and became a judgment, which was not appealed from by any of the parties interested; and the defendant paid over to his successor in office, the full amount shown by that auditors' report to be in his hands at the expiration of his term of office, to wit: the sum of $20,553.61, and took receipts for the same; that some time in January 1878, the errors above mentioned having been discovered, the defendant, who had no knowledge of the errors prior thereto, admitted the said errors, acknowledged the mistakes of the amounts above named, and promised O. H. Hollister, clerk to the commissioners, and J. G. Foster, the treasurer of the county, that he would pay the same; that the admission was definite and specific as to the items and amounts; and the promise, as shown by the evidence, was positive and unconditional.

" These are the facts reported in the form of a special verdict. By the act is undoubtedly meant that the finding of the facts should have all the force and effect of a special verdict, and then the cause could be ultimately decided upon these facts, according to law. In so deciding, the court is confined to the facts found by the special verdict, and its judgment must be confined to that verdict: Wallingford *v.* Dunlap, 2 Harris 31 and cases there cited.

" It may be proper here to say that we cannot pass upon the fifth exception, which goes to an alleged error in the legal arbitrator reporting as a fact that the promise of the defendant was unconditional. If that be error, it must be reached by an order on the arbitrator to return his testimony taken, which order must be founded upon motion, supported by affidavit, stating explicitly wherein the alleged error consists, and then for a motion as in nature of motion for new trial, to refer the case back to the legal arbitrator for a new finding. The Legal Arbitration Act, under which these proceedings were had, makes no provision for returning the evidence, and it is not a part of the record. In this case he has returned it, and from an examination of it we cannot say that he has erred in his finding of the facts proven. We come now to the material point in this case.

" The facts are that two years after the auditor's report was filed, and which was unappealed from, and hence final and conclusive, and binding as a judgment upon all parties, the defendant, upon the discovery of two important clerical and mathematical errors, admitted the errors, and promised to pay the same definitely, specifically and unconditionally. Was there a moral obligation resting on the defendant to pay this money, sufficient for a consideration to support this promise, or was it void as being mere *nudum pactum ?* From an examination of the authorities, we find the rule to be this: A moral obligation is sufficient to support an express promise,

[Stebbins *v.* County of Crawford.]

where there has been a pre-existing obligation which has become inoperative by positive law. Express promises, founded on pre-existing equitable obligations, may be enforced as founded on good consideration. They merely remove an impediment erected by law to the recovery of debts honestly due, but which the statute law and public policy protect the debtors from being compelled to pay.

"The case of debts barred by the Statute of Limitations, of debts incurred by infants, of debts of bankrupts, are illustrations of this rule. In all these cases there was originally a *quid pro quo*, and according to the principles of natural justice, the party receiving ought to pay, but the legislature has said he shall not be coerced. Then comes the promise to pay the debt that is barred; the debt of the infant, the debt of the discharged bankrupt, to restore to his creditor what by the law he had lost. In all these cases there is a moral obligation founded upon antecedent valuable consideration. Such promises, therefore, have a sound legal basis. They are not promises to pay something for nothing, not naked pacts, but the voluntary revival or creation of obligations which before existed in natural law, but which had been dispensed with, not for the benefit of the party obliged solely, but principally for the public convenience: per Parker, C. J., in Mills *v.* Wyman, 3 Pick. 207. To the same effect is Willing *v.* Peters, 12 S. & R. 177; Hemphill *v.* McClimans, 12 Harris 367; Kennedy *v.* Ware, 1 Barr 445; Paul *v.* Stackhouse, 2 Wright 302. Now, applying this rule to the facts in this case, what do we have? An actual pre-existing debt owing by this defendant to the plaintiff—a debt for trust moneys, which in *foro conscientiæ* is of a higher character than the ordinary debts which arise on account of dealings between individuals. This debt is barred by positive law by a judgment entered, in which the debtor is unwittingly but none the less positively released. According to the common sense and feeling of mankind, the debt exists until it is actually paid; the mind of the defendant assented to this principle. He felt the obligation of the unsatisfied debt, and in the language of the verdict, specifically and definitely admitted it, and positively and unconditionally promised to pay it. There can be no doubt, therefore, that this moral obligation was a sufficient consideration upon which to base this promise of the defendant to pay the debt, and the legal arbitrator did not err in applying these principles and answering defendant's points as he did.

"The defendant's seventh point was correctly answered. The clerk to the county commissioners and the county treasurer are both functionaries recognised by law, and the promise of defendant might with propriety be made to them, or at least to the treasurer. They were not engaged in the settlement or adjustment of the affairs of the county, and even if they were, it is difficult to see why the treasurer could not receive the defendant's promise. It is made the duty of the treasurer by law to receive all moneys due or accruing to the county.

[Stebbins *v.* County of Crawford.]

" This money in the hands of defendant was due and accruing to the county, and if it could or would have to be paid to him he could certainly receive a promise of defendant to pay it. As well say the cashier of a bank, or the treasurer or receiving officer of any corporation could not receive the promise of a debtor to the bank or corporation to pay a debt owing, as to say the county treasurer cannot receive the promise of a debtor to the county to pay a debt justly due it. In this case the treasurer is not an actor; he is but the passive recipient of the promise to pay. In this respect he was the agent of the political corporation, the county, and this political body has the right to reap the benefit of the defendant's promise made to pay them through its agent, the county treasurer, and to maintain this suit to enforce performance of that promise.

" This cause was well decided by the legal arbitrator, and there is nothing in the judgment of which the defendant has any right to complain, either 1n law, morals or good conscience.

" The exceptions filed to the award of the legal arbitrator are all dismissed, the award is affirmed, and final judgment directed to be entered on the same against the defendant for the amount of the award with interest from the filing thereof, together with costs of suit."

The defendant took this writ and alleged that the court erred in' dismissing defendant's exceptions and in affirming the report and award of the arbitrator, and entering judgment for the plaintiff thereon.

*D. C. McCoy & Son,* for plaintiff in error.—The settlement of Stebbins's account by the county auditors and their reports duly filed in the Common Pleas and not appealed from, are final and binding on all parties; Northampton County *v.* Yohe, 12 Harris 305; Northumberland County *v.* Bloom, 3 W. & S. 542; Brown *v.* White Deer Township, 3 Casey 109; Commissioners of Lycoming County *v.* The County of Lycoming, 10 Wright 496; Blackmore *v.* County of Allegheny, 1 P. F. Smith 160; Siggins *v.* Commonwealth, 4 Norris 278.

Again, a promise made to pay where there is no legal obligation, and in ignorance of the parties' rights, or under surprise, is not binding: Logan *v.* Matthews, 6 Barr 417.

A promise made to another not the agent of the plaintiff to pay a debt barred by the Statute of Limitations, or to do some act or pay a sum of money resting upon a moral obligation alone, is not binding: Gillingham *v.* Gillingham, 5 Harris 302; Kyle *v.* Wells, Id. 286.

Neither Hollister nor Foster were in any sense the agents of the county for the transaction of any business with the defendant respecting those reports or any errors contained in them. They both acted upon their own motion and responsibility. There is

[Stebbins v. County of Crawford.]

not a particle of evidence nor a hint in the report of the arbitrator that either of them was ever authorized by the county commissioners to do anything in the matter. If it is pretended that they acted as agents of the county, the agency must be shown by the party alleging it. The corporate powers of the county are exercised by the commissioners.

*Thomas Roddy* and *S. Newton Pettis*, for defendant in error. —A moral obligation to pay money or to perform a duty is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law but for the interference of some rule of law: 1 Parsons on Contracts 361; Chitty on Contracts 48; Willing v. Peters, 12 S. & R. 177; Paul v. Stackhouse, 2 Wright 302; Lee v. Maggerdge, 5 Taunt. 36, 44; Miles v. Wyman, 3 Pick. 209. The clerks of the county commissioners and the county treasurer were both officers of the county to whom with propriety such a promise could be given.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1879.

To the well-written and carefully considered opinion of the learned judge of the court below, we can add but little, except the approval of this court. That a moral obligation is sufficient to support an assumption to pay a debt, which cannot be collected by reason of the intervention of some positive law, as the Statute of Limitations, the operation of a judgment, or a discharge in bankruptcy, is a doctrine now so well established, that a discussion of it would be mere waste of logic. In Anspach v. Brown, 7 Watts 140, it is admitted that there is an obligation in morals, to pay a debt barred by a judgment, which will support an express promise to that effect. Such a debt, it is true, is put upon higher footing than one barred by the Statute of Limitations, for, it is said, there must be not only an acknowledgment of the debt, but a distinct and formal promise to pay; nevertheless, when these conditions are complied with, the promise is binding. What then though the auditor's report was equivalent to a judgment? That there was a clear mistake in it of some $1700, is not denied; and that Stebbins acknowledged that mistake, and clearly and unconditionally promised to pay the amount thus discovered to be due the county, is found by the legal arbitrator.

But it is objected, that this promise was made to the clerk of the commissioners and to the county treasurer, and is therefore not binding upon the defendant. But, as both these persons were county officers, we cannot see why the assumption to either of them would not be good, especially to the latter, as he was the only one who had power to receive the money and receipt for it. As was

[Stebbins *v.* County of Crawford.]

well observed by the court below, as well might you say that the cashier of a bank, or the treasurer of a corporation of any kind, could not receive the promise of a debtor, to pay a debt due to such bank or corporation.    But the officers above named, are not more nearly connected with the interests of their several institutions, than are the county clerk and treasurer with the interests of the county; there is, therefore, quite as much reason that a promise to the latter, to pay a debt due the county, should be binding, as to the former, to pay a debt due a bank or other corporation.

The judgment is affirmed.