## John T. Bailey et al., Appellants, v. Philadelphia et al.

*Municipalities—Moral obligation as consideration for payment of public money—Appropriation.*

The councils of a municipality may recognize a moral obligation as a good consideration for the payment of public money.

Councils of the city of Philadelphia have the power to transfer an item from one appropriation to another.

A teacher was elected supervising principal by a sectional school board in the city of Philadelphia. After she had entered upon the performance of her duties the board of education refused to confirm her election and regraded the school so as to dispense with the office of supervising principal. She held herself at all times ready to perform her duties as teacher, and brought suit by mandamus to compel the board of education to certify her name on the roll of teachers, but the suit was decided adversely to her. The councils of the city subsequently inserted in the appropriation to the board of education an item to pay her the amount of her salary, but on the board refusing to draw a warrant for this item, it was transferred by ordinance to the appropriation to the clerks of councils. *Held*, that the ordinance making the transfer was valid. The act of June 1, 1885, art. 6, P. L. 45, which provides that "no money shall be drawn from the city treasury except by due process of law, or upon warrants signed by the head of the appropriate department," does not limit the discretion of councils over the department to which appropriation should properly be assigned.

The words "appropriate department" in the act of 1885, include all officials charged with duties pertaining to the city government for whose expenses the city is obliged to provide. The clerks of councils are such officials as to all miscellaneous matters which councils may devolve upon them, though they are not technically heads of departments.

Argued Jan. 30, 1895. Appeal, No. 219, July T., 1894, by plaintiffs, from decree of C. P. No. 4, Phila. Co., June T., 1894, No. 470, dissolving a preliminary injunction. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain the payment of money to Margaret T. Sherry.

From the record it appeared that the plaintiffs were taxpayers of the city of Philadelphia. The ordinance under which Miss Sherry claimed payment was dated June 18, 1894, and was as follows:

" The city controller is hereby authorized and directed to make the following transfer, viz: From item 56, to pay Miss Margaret Sherry the amount of salary in dispute, $2,841, in the annual appropriation to the board of public education for the year 1894, to new item 8½, in the annual appropriation to the clerks of councils, to pay Miss Margaret Sherry said salary."

The facts of the case appear by the opinion of the Supreme Court.

The court entered a preliminary injunction which it subsequently dissolved.

*Error assigned* was decree dissolving preliminary injunction.

*Theodore M. Etting* and *David W. Sellers, J. Percy Keating* with them, for appellants.—The right of taxpayers to restrain acts contrary to the laws governing municipalities is recognized in Com. v. Meeser, 44 Pa. 342 (1863), and Tatham's App., 80 Pa. 466 (1876).

This is a gift of public moneys wholly without consideration : Hospital v. Luzerne, 84 Pa. 59.

The councils of the city cannot assume or pay a debt which is not a legal obligation: People v. Stout, 23 Barb. (N. Y.) 349; Halstead v. Mayor, 3 Comstock (N. Y.), 430; Dechert v. Comm., 113 Pa. 241; Westbrook v. Deering, 63 Maine, 238; Perkins v. Milford, 59 Maine, 315; Lyddy v. Long Island City, 104 N. Y. 218.

The action of councils constitutes an interference with the executive functions of a co-ordinate branch of the city government, to wit, the board of education, and as such is prohibited by law: Act of June 1, 1885, P. L. 40; Johnson's App., 47 Pa. 384; Allen v. Taunton, 19 Pick. 485; act of April 21, 1855, sec. 4, P. L. 269; act of May 13, 1856, P. L. 573; Tatham v. Phila., 2 W. N. C. 564.

The ordinance provides for the so-called salary in dispute

through the medium of warrants drawn by the clerks of councils. This is clearly illegal: Act of June 1, 1885.

The appropriate department for the payment of services in connection with schools could not be other than the department of education, and councils recognized this in the first instance by providing for payment through that department.

*John G. Johnson, Wm. A. Hayes* and *George L. Crawford* with him, for Margaret T. Sherry, appellee, cited: Chestnut v. City, 41 Leg. Int. 232.

*James Alcorn*, assistant city solicitor, *Charles F. Warwick*, city solicitor, with him, for the city of Philadelphia, appellee.

OPINION BY MR. JUSTICE MITCHELL, April 29, 1895:

This case does not raise any question of the relative powers of the board of education, and the sectional school boards, nor involve in any way the merits of the original controversy which came to this court in Com. ex rel. Sherry v. Jenks et al., 154 Pa. 368.

What we have now before us is the power of the councils of Philadelphia to make the appropriation to Miss Sherry, and to do it by a transfer of an item from one appropriation to another. On this subject the main question is the right of councils to recognize a moral obligation as a good consideration for the payment of public money.

The facts are not in dispute. Miss Sherry was elected by the sectional school board as supervising principal of the John Moffet Combined Grammar and Secondary School, in October, 1891, and began the performance of her duties as such on Jan. 4, 1892. The board of education on February 10th refused to confirm her election, and on March 8, 1892, regraded the school so as to dispense with the office of supervising principal. Miss Sherry and the sectional board which had elected her, claiming that her title was complete by the election, and did not require to be confirmed by the board of education, she brought suit by mandamus to compel the board of education to certify her name on the roll of teachers to the city controller. This suit was decided against her by this court on April 24, 1893. The councils of the city inserted in the appropriation to the board of

education for 1894, an item, No. 56, to pay Miss Sherry " the amount of salary in dispute," but the board refusing to draw a warrant for this item it was transferred by ordinance June 18, 1894, to a new item, 8½, in the appropriation to the clerks of councils " to pay Miss Margaret Sherry said salary."

This appropriation is on the face of it, to pay for services rendered. Whether it is accurately called salary or not is unimportant. Nor is it material that the services may not have included all the work of a supervising principal for the full period. That was not Miss Sherry's fault. She held herself in readiness to perform, and if councils had a right to compensate her at all, the amount was within their discretion so long as it was exercised in good faith and without abuse. Miss Sherry not only held herself ready to render the services but claimed the right to do so. That right depended on a question of authority under the law between the sectional school board and the board of education, and the real contest in the matter was between those two bodies and was fought over Miss Sherry's head. For that she was not responsible. The contest terminated adversely to Miss Sherry's right by the decision of this court in April, 1893, and no compensation was claimed by her or granted by councils for any period after that date.

· While the contest was pending the legal question may fairly be said to have been in doubt. The title of certain teachers to office would seem to be complete by an election by the sectional board, under the law as stated in the opinion of the city solicitor of Philadelphia, March 2, 1888 (Append. to Ord. 1888, p. 17), while the qualifications, etc. and the title of others depended on the action of the board of education. How far supervising principals belonged to one class or the other was open to question. Had the city councils while Miss Sherry's claim was pending and undecided passed an ordinance to pay her in settlement of her claim there could have been no doubt of their authority to do so. The right to compromise and settle an existing and asserted claim does not depend on the ultimate decision for or against its validity. If it did, compromise instead of being an end of litigation which the law favors, would be only an additional complication in the progress of it. How far does the law prescribe as mandatory, any different rule,

when the settlement is not made until after the question of right is decided? Undoubtedly the legal claim of Miss Sherry was at an end when this ordinance was passed. She had no right which could have been enforced by action. But it does not follow that her claim was without merit. The committee of councils reported, on the contrary, after investigation, that it was founded on services rendered under claim and color of right and title, and was meritorious. Does the law prohibit the city from recognizing the moral obligation arising from these circumstances? We do not find anything that compels us to so hold. A moral obligation in law is defined as one " which cannot be enforced by action but which is binding on the party who incurs it, in conscience and according to natural justice," and again, a " duty which would be enforceable by law, were it not for some positive rule, which, with a view to general benefit, exempts the party in that particular instance from legal liability : " 15 Am. & Eng. Ency. of Law, 716. In this state it is held that such an obligation will sustain an express promise to pay, and a fortiori, an actual payment: Hemphill v. McClimans, 24 Pa. 367 ; Stebbins v. Crawford Co., 92 Pa. 289 ; Leonard v. Duffin, 94 Pa. 218 ; Brooks v. Bank, 125 Pa. 394 ; Holden v. Banes, 140 Pa. 63 ; Kelly v. Eby, 141 Pa. 176. If a mere promise to pay under such circumstances would be enforced by law against an individual, certainly an actual payment, or its equivalent, an order by the councils on their ministerial officer who has no duty in reference thereto but obedience, should be sustained against a municipal corporation. Councils it is true are trustees and the law limits their expenditure of public money to public purposes, but they are also representatives of their constituents, and delegates of the city's legislative powers, and there is nothing in the law or in sound public policy to prohibit the city from being honest, and paying its bona fide debts which are good in conscience and justice, though for sufficient other reasons, there is a general rule which prevents them from being enforceable by law.

The opinion of the learned judge below calls attention to some recent instances of similar municipal action, among them, that in regard to Mr. Oellers, who acted as city treasurer for a time under an election by councils to a vacancy which it was subsequently decided should be filled by the appointee of the

governor: Com. ex rel. Atty. Gen. v. Oellers, 140 Pa. 457. Councils passed an ordinance making compensation to him for his services. .It would have been a very doubtful public policy which would have compelled councils to proclaim in advance that the officer to be elected would get no compensation for his eight months or more of labor and responsibility unless he could maintain his title de jure to the office, the mode of filling which was then known to be in dispute. With such an announcement it is not likely that the office would be accepted by any man of the character and abilities suited to that responsible position, but rather that it would go to some one who wanted it, in the language of the day for "what there was in it."

The other objections are to the method of payment adopted. The item was originally contained in the appropriation to the board of education, and when that department refused to draw the warrant, it was transferred to the appropriation to the clerks of councils. Transfer of items is expressly recognized by the act of June 1, 1885, art. 7, P. L. 45, which provides that the city controller "shall not suffer the appropriation for one item of expense to be drawn upon for any other purpose, or by any department other than that for which the appropriation was specifically made, except on transfers made by ordinance of councils."

Article 6 of the same act provides that "no money shall be drawn from the city treasury except by due process of law, or upon warrants signed by the head of the appropriate department," and it is argued that this item belongs properly to the department of education. But "appropriate department" in this section means the department to which the appropriation is made, and whose head is to draw the warrants. It is the general direction which is embodied again specifically as to the controller in section seven already quoted prohibiting that officer from countersigning any warrant drawn by "any department other than that for which the appropriation was specifically made." It is not intended to interfere with the discretion of councils over the department to which appropriations should properly be assigned. How far councils might under this discretion appropriate to one department funds the control of which was within the objects and jurisdiction of another, we

need not consider, as no such case is before us. This appropriation is not an interference with the functions of the department of education, for it does not assume to determine any question of title in Miss Sherry as a teacher, or her legal right to salary as such. It is a recognition and payment of an obligation of the city for services rendered, and the department in which they were rendered is not in any way material on this question. If the obligation had been binding in law and a judgment had been obtained upon it, there would have been no compulsion on the councils to assign the appropriation to pay such judgment to the department of education because the original cause of action arose there. It might appropriately be assigned to the law department which has the control and supervision of the city's lawsuits. So in the present case the appropriation is one of the miscellaneous class which councils may commit to the care of any department they see fit. Nor is the objection that the clerks of councils are not a department of the city government any more forcible. There are many expenses of the city which are not directed by a technical department, and appropriations are annually and regularly made among others to the district attorney, the clerk of the quarter sessions, the coroner, the sheriff and other officers who form no part of the city government strictly so called, and are certainly not departments thereof under the act of 1885. The words "appropriate department" in that act, therefore, must be held to include all officials charged with duties pertaining to the city government, for whose expenses the city is obliged to provide. The clerks of councils are such officials as to all miscellaneous matters which councils may devolve upon them, though they are not technically heads of departments.

This case was heard in the court below on a motion to dissolve a preliminary injunction, but as the whole controversy is involved, the parties have agreed that it shall be treated here as upon final hearing.

The order dissolving the injunction is affirmed and the bill dismissed with costs.