## Justice, Appellant, *v.* Philadelphia.

*Public officers—Appointment—Civil service examination—Moral obligation—Compensation—Municipalities—Act of March 5, 1906, P. L. 83.*

Where a clerk is appointed by one of the heads of departments of a city of the first class without having passed the civil service examination required by law, and such clerk has performed valuable services for the municipality, a moral obligation is created in his favor which will sustain an ordinance of the councils of the municipality appropriating a proper sum for payment of the services rendered.

Argued Dec. 11, 1907. Appeal, No. 203, Oct. T., 1907, by plaintiff, from decree of C. P. No. 4, Phila. Co., June T., 1907, No. 2,885, dismissing motion for preliminary injunction in case of Henry Justice v. City of Philadelphia, John M. Walton, Controller of the County of Philadelphia, and Robert Linton. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity for an injunction. Before AUDENRIED, J.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree refusing preliminary injunction.

*Vivian Frank Gable*, with him *Robert D. Jenks* and *Cyrus D. Foss, Jr.*, for appellant.—A moral obligation can grow out of an authorized act of a public officer: Hodges v. City of Buffalo, 2 Denio (N. Y.), 110; Gamble v. Watkins Village, 7 Hun, 448; Sillcocks v. The Mayor, etc., of N. Y., 11 Hun, 431; Tash v. Adams, 64 Mass. 252; Hood v. Mayor of Lynn, 83 Mass. 103; New London v. Brainard, 22 Conn. 552; Black v. Common Council of Detroit, 119 Mich. 571 (78 N. W. Repr. 660).

*Ernest Lowengrund*, assistant city solicitor, with him *Harry A. Mackey* and *J. Howard Gendell*, city solicitor, for appellees.—This case is ruled by Bailey v. Philadelphia, 167 Pa. 569.

With respect to the numerous cases from other states which

appellant cites in this connection, it may be thought enough to point out that, whatever the law may be elsewhere, in Pennsylvania it is as well established as any legal proposition can be, that the legislative bodies of the cities of this commonwealth, and especially the city of Philadelphia, with its broad charter powers and uninterrupted usage of more than two centuries (Tatham v. Phila., 2 W. N. C. 564; 11 Phila. 276) are amply authorized to appropriate money for objects redounding to the general welfare, such as the celebration of public or historical events, etc.: Stegmaier v. Goeringer, 218 Pa. 499; Commonwealth v. Pittsburg, 183 Pa. 202; Commonwealth v. Gingrich, 21 Pa. Superior Ct. 286; Tagg v. Phila., 18 W. N. C. 79.

OPINION BY HEAD, J., October 12, 1908:

The machinery, by which the affairs of a great city are administered, is necessarily extensive and complicated. It is not strange therefore that when the legislature, in the exercise of its sovereign power enacts a law which brings about a sweeping change in the methods of supplying and operating that machinery, honest differences of opinion may arise between the various officials charged with the administration of such law, as to its true scope and the intent of the lawmaker in its enactment. Such a difference seems to have arisen in the summer of 1906— following the passage of the Act of March 5, 1906, P. L. 83— between the civil service commission, created by that act, and the city solicitor of Philadelphia.

The latter officer, having need of the services of a clerk in the law department of the city, and being of opinion that the act mentioned did not forbid the exercise of the power of appointment by him as it theretofore existed, appointed one Robert Linton. He at once entered upon the discharge of his duties.

Some time later the commission, having learned of the appointment, remonstrated against it, affirming that the act of assembly applied as well to the law department of the city as to others and denying the power of the city solicitor to lawfully make the appointment except in the manner prescribed by the act. Personal conferences and correspondence followed but no agreement being reached the controller was notified to honor

no warrants for the salary of Linton and that official determined to take no action until the situation was cleared up.

The city solicitor then informed Linton that his right to receive compensation for his services would likely be contested and the latter, concluding he could not afford to take such a risk, quit the service of the city and found other employment. This was about the middle of September and the amount then due to him, at the salary fixed, was $246.50. He never brought any action against the city to determine whether or not it was legally liable for the payment of this sum.

By an ordinance of the city councils, duly approved by the mayor, on March 2, 1907, there was appropriated, inter alia, "to pay bills of Robert Linton, two hundred and forty-six dollars and fifty cents." This bill was then filed by the appellant, a citizen and taxpayer, praying for a decree declaring said appropriation void and restraining the fiscal officers of the city from paying out the money therein called for. A preliminary injunction having been denied, this appeal was taken, and as there is no seriously disputed question of fact involved, a stipulation has been filed that we are to dispose of the case as if the appeal had been taken after final decree.

The appellant rests his case primarily on the proposition that at the time of the appointment of Linton, the act of 1906 was in full force and effect, and the power of appointment, vested in the city solicitor, was not lawfully exercised and raised no liability, on the part of the city, to pay for any services rendered by the appointee and that, as a consequence, the act of councils appropriating, for such a purpose, money contributed by the appellant and other taxpayers, should be restrained. The appellees answer that the city solicitor's power of appointment was not controlled by the act, not only upon the broad ground taken by that official at the time—viz. that the status of his office under the Bullitt bill, as construed in Com. ex rel. v. Fitler, 147 Pa. 288, was not intended to be changed by the act of 1906,— but also for the reason that the commission had not then formulated any rules and regulations concerning appointments in that office and had them approved by the mayor, until which time, the act did not, by its own terms, become operative.

But it is further and more strongly argued that even if the appointment of Linton were technically illegal, the city nevertheless received the full benefit of his services and thereby was raised a moral obligation, if not a legal one, to pay for the services, and this moral obligation furnished a secure foundation upon which the subsequent, voluntary action of councils may rest. It must be manifest that if this contention be sound, the question of the original validity of the appointment ceases to be of controlling importance in the disposition of the case before us.

A moral obligation may have its birth at the same instant and in the same transaction with a civil one, but may continue in undiminished vigor long after the civil one has ceased to exist. In a multitude of familiar instances our civil law has recognized the existence of such moral obligation as a proper incentive to and a sufficient consideration for a new undertaking, act or promise from which a new legal liability will arise. When an individual, against whom no legal duty can be asserted, recognizes the force of the still existent moral obligation and acts accordingly, his conduct is deemed praiseworthy, not blameable. We can see no apparent reason why a number of men, living as a community, should not be spurred to action by the promptings of a civic or public conscience with the like result.

It may be that the city solicitor, in attempting to secure for the city services which she needed, committed an error of judgment in determining the mode by which those services should be obtained. But it is not denied that he succeeded in obtaining them and that they were just as valuable to the city as if the line and letter of the law had been observed in the appointment of the clerk who rendered them. If, under such circumstances, the city itself, acting through its councils, sees fit to recognize the facts that the services were rendered and were valuable and therefore ought to be paid for, even though there were no legal obligation constraining such payment, we can see no proper ground for the interference of a court of equity to prevent such action.

But apart from the force of the reasoning we have thus briefly sought to indicate we think the propriety of applying the principle stated to the facts of the present case, has been conclu-

sively settled by the Supreme Court in Bailey et al. v. Philadelphia, 167 Pa. 569. In that case one Miss Sherry had been elected by the sectional school board as supervising principal of a school in the city and began the performance of the duties of that position. The board of education refused to confirm her election or certify her name on the roll of teachers to the city controller. She, claiming that her title was complete by the action of the sectional board, brought suit, by mandamus, to compel such a certification of her name by the general board as would enable the controller to legally issue warrants for her salary. Her claim of right was determined adversely to her both in the court below and in the Supreme Court. By that adjudication every alleged legal right of action against the city was destroyed. Her claim included not only payment for services actually rendered, the benefit of which the city had received, but also for the period during which she regularly tendered performance but was unable, by reason of the action of the school officials, to actually render any services.

With matters in this condition the city councils inserted, in the regular appropriation to the board of education, an item to pay "the amount of salary in dispute" to Miss Sherry; but the board refusing to draw a warrant, the item was transferred, by ordinance, to another appropriation. Thereupon a bill was filed by a taxpayer to restrain the payment of the money. It seems manifest to us that in several aspects the facts, thus stated, furnished more grounds for the interposition of a taxpayer than can be found in the case before us. The following language, from the opinion of Mr. Justice MITCHELL, appears to us to cover every material phase of the case before us, and to take away every foundation upon which the present bill is sought to be rested.

"This appropriation is on the face of it, to pay for services rendered. Whether it is accurately called salary or not is unimportant. Nor is it material that the services may not have included all the work of a supervising principal for the full period. That was not Miss Sherry's fault. She held herself in readiness to perform, and if councils had a right to compensate her at all, the amount was within their discretion so long as it

was exercised in good faith and without abuse. Miss Sherry not only held herself ready to render the services, but claimed the right to do so. That right depended on a question of authority under the law between the sectional school board and the board of education, and the real contest in the matter was between those two bodies and was fought over Miss Sherry's head. For that she was not responsible. . . . Undoubtedly the legal claim of Miss Sherry was at an end when this ordinance was passed. She had no right which could have been enforced by action. But it does not follow that her claim was without merit. The committee of councils reported, on the contrary, after investigation, that it was founded on services rendered under claim and color of right and title, and was meritorious. Does the law prohibit the city from recognizing the moral obligation arising from these circumstances? We do not find anything that compels us to so hold. A moral obligation in law is defined as one 'which cannot be enforced by action but which is binding on the party who incurs it, in conscience and according to natural justice,' and again, a 'duty which would be enforceable by law, were it not for some positive rule, which, with to general benefit, exempts the party in that particular instance from legal liability:' 15 Am. & Eng. Ency. of Law, 716. In this state it is held that such an obligation will sustain an express promise to pay, and, a fortiori, an actual payment: Hemphill v. McClimans, 24 Pa. 367; Stebbins v. Crawford County, 92 Pa. 289; Leonard v. Duffin, 94 Pa. 218; Brooks v. Bank, 125 Pa. 394; Holden v. Banes, 140 Pa. 63; Kelly v. Eby, 141 Pa. 176. If a mere promise to pay under such circumstances would be enforced by law against an individual, certainly an actual payment, or its equivalent, an order by the councils on their ministerial officer who has no duty in reference thereto but obedience, should be sustained against a municipal corporation. Councils it is true are trustees and the law limits their expenditure of public money to public purposes, but they are also representatives of their constituents, and delegates of the city's legislative powers, and there is nothing in the law or in sound public policy to prohibit the city from being honest, and paying its bona fide debts which are good in conscience and justice, though for

sufficient other reasons, there is a general rule which prevents them from being enforceable by law."

The able counsel for the appellant seeks to distinguish his case from the one cited on the theory that the appointment in the present case was illegal, forbidden by the statute, nay, perhaps, even a misdemeanor, and from such an act no moral obligation could arise.

We may concede, arguendo merely, that if the learned city solicitor made an honest error of judgment in his construction of the act, no legal liability on the part of the city would be thereby created; or even that if he wilfully violated the provisions of the act of 1906, he could be convicted of a misdemeanor under section 24. But we can see nothing either immoral or illegal in the appointee, acting on the advice and judgment of his chief, rendering services that were valuable to the city, nor in the latter subsequently recognizing the existence and the value of those services.

We are obliged to conclude, therefore, that the learned court below was right in refusing the injunction prayed for, and under the terms of the stipulation filed, the bill must be dismissed.

Bill dismissed at the costs of the appellant.