## Walthour, Appellant, *v.* McDowell.

Argued March 16, 1933.

Before
Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*William S. Rial,* and with him *H. E. Marker,* for appellant, cited: Justice v. Philadelphia, 37 Pa. Superior Ct. 267; Doverspike v. Mager, 51 Pa. Superior Ct. 525; Nowling v. Newell, 65 Pa. Superior Ct. 67 and Strock v. Cumberland County, 176 Pa. 59.

*Paul J. Abraham,* for appellee.

*Lewis C. Walkinshaw,* for Harry M. Harrold, intervening appellee.

Opinion by Stadtfeld, J., April 28, 1933:

This is an appeal by plaintiff from the decree of the lower court refusing a writ of peremptory mandamus, and vacating the alternative writ of mandamus and quashing the writ in a petition of D. Taylor Walthour against Garfield A. McDowell, county controller of Westmoreland County. The facts are undisputed and are correctly set forth in the opinion of the lower court, Copeland, P. J., concurred in by Whitten and Dom, JJ., from which we quote: "The plaintiff in

this case, D. Taylor Walthour, on March 10, 1932, presented his petition to this court setting forth that he is a citizen of Greensburg, Westmoreland County, Pennsylvania; that he was duly elected an assessor in the Sixth Ward of the city of Greensburg for a term of office beginning the first Monday of January, 1930; that since his election as assessor he performed the duties required by law of an assessor until the 26th day of June, 1931, on which date an Act of the General Assembly, which had been theretofore passed, was approved by the Governor of the Commonwealth of Pennsylvania abolishing the office of assessor; that the act provided that the county commissioners shall appoint a board of assessment and revision of taxes composed of three members; that the act provided for the appointment of subordinate assessors by the board of assessment and revision of taxes; that the plaintiff petitioner received a precept from the county commissioners of Westmoreland County directing him to make assessments for county purposes in the Sixth Ward of the City of Greensburg, Westmoreland County; that pursuant to the precept so received the plaintiff petitioner performed the duties of a subordinate assessor under the law, assessing the property subject to taxation in the Sixth Ward of the City of Greensburg during the year 1931 for public purposes, and in the capacity of a subordinate assessor rendered services to the extent of $100; that the board of assessment and revision of taxes composed of three members was appointed on the 13th day of February, 1932, by the county commissioners; that the board of assessment and revision of taxes, appointed by the county commissioners, on the 16th day of February, 1932, ratified the appointment of the plaintiff petitioner by the county commissioners as well as all other appointments of city, borough and township assessors and at the same time ratified, approved and confirmed the

assessments so made by the several assessors in the county who received precepts from the county commissioners to assess all property for taxable purposes for the year 1931; that the salary board on February 17, 1932, by resolution fixed the wages or salary of the subordinate assessors appointed by the county commissioners for the purpose of making the assessment for the year 1931 at $5 per day; that the plaintiff petitioner presented his claim of $100 for services to the county commissioners who approved the same; that Garfield A. McDowell, the County Controller, respondent and defendant, refused to approve the claim and issue a warrant for the payment of the same upon the county treasurer of Westmoreland County; that the plaintiff petitioner is without adequate and specific remedy at law, and praying that a peremptory mandamus issue forthwith to Garfield A. McDowell, county controller, respondent and defendant, requiring him to approve the claim and issue a warrant therefor according to law.

"In response to this petition and prayer the court on the 10th day of March, 1932, ordered that an alternative writ of mandamus forthwith issue directing Garfield A. McDowell, county controller, respondent and defendant, to issue a warrant to the plaintiff petitioner for the sum set forth in the petition or show cause why he refused to do so.

"On the 11th day of March, 1932, this writ was served personally on Garfield A. McDowell, county controller. On the same day the petition of Harry M. Harrold was presented to the court setting forth that he is a resident, freeholder and taxpayer in the Township of Hempfield, County of Westmoreland and State of Pennsylvania, and praying that he be permitted to intervene in his own behalf and on behalf of other freeholders, taxpayers and citizens whom he repre-

sents, and that the peremptory or alternative writ of mandamus be refused.

"On the 14th day of March, 1932, Garfield A. McDowell, the county controller, filed an answer to the plaintiff petitioner's petition admitting that the plaintiff petitioner, D. Taylor Walthour, had received a precept from the county commissioners of Westmoreland County directing him to make the assessment for county purposes in the Sixth Ward of the City of Greensburg, but denying that the plaintiff petitioner duly acted as a subordinate assessor, and denying the right of the county commissioners to issue such precept; admitting further that a resolution was passed by the board of assessment and revision of taxes ratifying the precept issued to D. Taylor Walthour, plaintiff petitioner, to make assessments for county purposes in the Sixth Ward of the City of Greensburg, but denying the authority of that board to pass such a resolution; also further admitting in his answer that a resolution was passed by the salary board fixing the wages or salary of the assessors appointed by the precepts of the county commissioners but denying the authority of the salary board to so fix the wages of any assessor appointed by the county commissioners subsequent to the passage of the Act of June 26, 1931.

"With the issue thus framed by the petition of D. Taylor Walthour, the issuing of the alternative writ of mandamus, the petition of Harry M. Harrold to intervene, by the answer of Garfield A. McDowell, the county controller, and by the petition to vacate the order permitting Harry M. Harrold and other freeholders and taxpayers of Hempfield Township to intervene in this proceeding, this case came on to be heard before the court in banc."

The court in banc held that this was in effect a suit for the recovery of salary or compensation of a public officer and that the plaintiff petitioner, D. Taylor

Walthour, must prove his title to the office before he can recover a salary which attaches to the title of the office and not to the service or the person performing the office; that the salary and emoluments of a public official attached to the office and not to the individual discharging the duties of the office except as he is an officer de jure.

The court in its opinion quoted from the third paragraph of the petition wherein the plaintiff admits that "the duties and term of the borough, ward and township assessors in the County of Westmoreland so far as assessments for taxation are concerned ceased and terminated upon the passage of the Act creating the board of assessment and revision of taxes and its approval by the Governor on the 26th day of June, 1931"; and therefore after the 26th day of June, 1931, he was not an "assessor" eo nomine.

The court further held that the acts of plaintiff petitioner in assessing the taxable property in the Sixth Ward of the City of Greensburg and the subsequent ratification thereof by the board of assessment and revision of taxes, constitute a valid and legal assessment of the property, but denied that the validation of the assessments by ratification gave the plaintiff petitioner the right to sue for and recover a salary, or entitled him to compensation for service as an officer de jure. The court further held that the county commissioners were without right or authority in law to appoint subordinate assessors or issue a precept to them to assess the property, subject to taxation, for taxable purposes during the year 1931, or to enter into a contract with anyone to assess the property, and that such appointment or employment being illegal there can not be a ratification of such illegal appointments to a public office. The court therefore held that the board of county commissioners had no authority to appoint plaintiff a subordinate asses-

sor, and that the board of assessment and revision of taxes did not appoint plaintiff a subordinate assessor until February 16, 1932, when it adopted a resolution ratifying the alleged appointment by the county commissioners, made sometime after June 26, 1931 and before January 1, 1932.

The court therefore held that plaintiff was not an officer de jure but an officer de facto, and therefore not entitled to compensation for services requiring the exercise of discretion in assessing the property subject to taxation.

From the order dismissing plaintiff's petition this appeal is taken.

The court in a learned and exhaustive opinion cites many cases in support of the principle that a de facto officer can not claim any rights incident to an office, and that he can not collect fees or set up any title to property as such an officer, and that therefore it was not permitted to award the salary or fees attached to a public office to one who is not the officer de jure, and that the fees claimed are for official services alleged to have been performed prior to January 1, 1932.

Without questioning the force and authority of the cases cited by the learned court in support of its conclusion, we think the instant case can in its facts be distinguished from the cases to which the principle cited applies.

We do not think that the right or title to the office of subordinate assessor was involved, nor that the right to compensation depended upon establishing his right to the office, nor does it involve the question of an appointment of a de jure officer nunc pro tunc, as of a date prior to the date when such appointment was actually made.

It is admitted that plaintiff performed such duties as were required of a subordinate assessor and made a return thereof which was duly adopted by the board

of Assessment and revision of taxes after their appointment. The salary board by resolution, (reciting that public necessities required the 1931 assessment, the informality of the appointment of acting assessors, the ratification and confirmation by its board of assessment and revision of such appointment and their assessments, but that the compensation of such acting assessors had not been determined upon) fixed the wages or salary at the sum of $5 per day for the time actually spent by each assessor during the year 1931. The bill of plaintiff in the sum of $100 was for the time and labor actually rendered.

The Act of 26th of June, 1931, P. L. 1379 created a board of assessment and revision of taxes to be appointed by the county commissioners and abolished duties and terms of borough, ward and township assessors in counties of the third class, of which the County of Westmoreland is one.

Section 3 of the Act provided that "It shall be the duty of said board ...... to make and have supervision of the making of all assessments of persons property and occupations now, or hereafter made, subject to assessment for taxation for county, borough, ...... purposes."

Section 4 provided that the "board shall divide the county into convenient districts ...... and shall appoint subordinate assessors for said districts. The subordinate assessors shall receive such compensation as the salary board shall fix, not exceeding two thousand dollars per annum, which salary shall be paid out of the county treasury."

Section 5 provided that the "said board may prescribe rules and regulations for the conduct of said subordinate assessors, determine when precepts shall be issued to them and when they shall make returns to said board, both in triennial and intermediate years."

(The year 1931 was not a triennial year in Westmoreland County.)

Section 10 provided that the subordinate assessors, between the triennial assessments shall revise any assessments by correcting errors, by adding thereto any property or subject of taxation which may have been omitted or any new property or subject of taxation which may have become into being since the last triennial assessment. Also they shall add thereto the names of any persons who have moved into such districts and strike therefrom the names of any persons who have removed from such district, since the last triennial assessment. It also provides for revision of assessments and valuations between triennial assessments by increasing or decreasing the same where there has been a change in conditions or where there has been a subdivision or by reason of the fact that improvements have been placed thereon.

Section 15 of the Act of 1931 provides that: "When the said valuations and assessments have been made, all taxation for county, borough, town, township, school purposes (except in cities), and poor purposes within the limits of such county, shall be based upon such valuations."

The plaintiff in this case acted as an assessor not by virtue of any election, but by informal appointment, but only for the purpose of assessing subjects of taxation for county purposes.

Under the Act of May 2, 1929, P. L. 1278, cited as "The General County Law," (Purdon's Pa. Stat., Ann. Tit. 16, Sec. 301), it is provided with reference to Salary Boards, in Article III, Section 301, "The salaries and compensation of all appointed officers, clerks, stenographers and employees who are paid from the county treasury shall be as now or hereafter fixed by law, or as may be fixed by the salary board, created by law for such purposes."

The General County Act of 1929, P. L. 1278 in Article IV, Section 349, (Purdon's Ann. Pa. Stat., Tit. 16, Sec. 349), provides: "The controller shall scrutinize, audit and decide on all bills, claims and demands whatsoever against the county. All persons having such claims shall first present the same to the controller and if required make oath or affirmation before him to the correctness thereof . . . . . . all claims which he shall find legally due he shall certify to the commissioners."

Appellant contends that a warrant on the county treasurer for payment of plaintiff's claim should be issued because the appointment of the plaintiff in giving to him a precept to assess properties, even though irregular, was ratified and confirmed by the only board which had the power after June 26, 1931, "to make and have supervision of the making of all assessments"; the county received the benefits of plaintiff's services; the Act of 1931, declared that subordinate assessors shall receive such compensation as shall be fixed by the salary board, and it shall be paid out of the county treasury, and the salary board with complete knowledge and on notice of the circumstances of the appointment, specifically fixed by resolution, plaintiff's compensation for his services so rendered during 1931.

The board of assessment and revision, after their appointment February 16, 1932, by resolution reciting the Act of 1931, that no board of assessment and revision was appointed thereunder in 1931, but "in the meantime it was necessary for the dispatch of public business and securing the proper assessments . . . . . . that the various subjects of taxation be assessed during the year 1931," and the county commissioners directed the various assessors to so act which these assessors did and were now submitted to the board, it was "resolved that the designation of the city, borough and township assessors as subordinate assessors

by the county commissioners for said assessment as herein recited, be ratified, approved and confirmed and the assessments as so made be adopted by the said Board as if they had been appointed by this board.''

The salary board of Westmoreland County composed of the county commissioners and the respondent controller, to which is given the power (General County Act of May 2, 1929, P. L. 1278, Article III, Section 301) to fix the compensation of all appointed officers or employes ''who are paid from the county treasury,'' met on the 17th of February, 1932, and adopted preambles reciting the appointment of the board of assessment and revision of taxes for said county, and that the necessities required an assessment be made during the year 1931, and the informal delegation by the county commissioners of that duty to the various ward, borough and township assessors, and the ratification and confirmation of said appointments and the assessments so made, ''Resolved, that the wage or salary of the said ward, borough and township assessors, for the assessment during the year 1931 for the year 1932, be fixed at the sum of Five ($5) Dollars per day for time actually spent by each assessor in the performance of said duties.''

We do not agree with the lower court that the controlling question is whether the board of assessment and revision of taxes had authority to ratify the alleged appointment by the county commissioners of plaintiff as a subordinate assessor, made some time before January 1, 1932.

It is admitted that the assessments made by plaintiff constitute a valid legal assessment of the property; it is further admitted that there was an emergency existing which required these assessments to be made; that the charges of plaintiff were for time and labor expended, and that the same are reasonable and have been approved by the County Commissioners.

Under the Act of 1931, supra, Section 4, it was contemplated that an *annual* salary, not exceeding $2,000 per annum, should be paid the subordinate assessors, as the salary board might fix. In the instant case the board fixed plaintiff's compensation for his services at the rate of $5 per day as a "wage or salary" for the time actually spent by him in the performance of his duties.

The real question is whether the county, having been rendered valuable service in an emergency, the benefit of which it retains, for which no legal obligation arose at the time the person who rendered the same was employed, can thereafter recognize a moral obligation for the payment of a reasonable sum therefor.

The salary board to which is referred the question of all compensation for county appointees, after notice of the invalidity and circumstances of plaintiff's appointment, fixed plaintiff's compensation at $5 per day for the time spent by him on the county's business. It was not, strictly speaking, the payment of the salary attached to the office, but compensation for services actually rendered.

Does the law prohibit the county from recognizing the moral obligation arising from these circumstances?

In Justice v. Philadelphia, 37 Pa. Superior Ct. 267, a bill was filed by a taxpayer to restrain the payment of a salary of a clerk illegally employed in the office of the City Solicitor, and after the clerk quit the service an ordinance was passed authorizing his payment, without bringing any suit for services, Judge HEAD said on page 269: "The appellant rests his case primarily on the proposition that at the time of the appointment of Linton (the clerk), the Act of 1906 was in full force and effect, and the power of appointment vested in the city solicitor was not lawfully exercised and raised no liability, on the part of the city, to pay

for any services rendered by the appointee and that, as a consequence, the act of councils appropriating, for such a purpose, money contributed by the appellant and other taxpayers, should be restrained ...... But it is further and more strongly argued that even if the appointment of Linton were technically illegal, the city nevertheless received the full benefit of his services and thereby was raised a moral obligation, if not a legal one, to pay for the services, and this moral obligation furnished a secure foundation upon which the subsequent voluntary action of councils may rest. It must be manifest that if this contention be sound, the question of the original validity of the appointment ceases to be of controlling importance in the disposition of the case before us. A moral obligation may have its birth at the same instant and in the same transaction with a civil one, but may continue in undiminished vigor long after the civil one has ceased to exist. ...... When an individual, against whom no legal duty can be asserted, recognizes the force of the still existent moral obligation and acts accordingly, his conduct is deemed praiseworthy, not blamable. We can see no apparent reason why a number of men, living as a community, should not be spurred to action by the promptings of a civic or a public conscience with the like result. It may be that the city solicitor, in attempting to secure for the city services which she needed, committed an error of judgment in determining the mode by which those services should be obtained. But it is not denied that he succeeded in obtaining them, and that they were just as valuable to the city as if the line and letter of the law had been observed in the appointment of the clerk who rendered them. If, under such circumstances, the city itself acting through its councils, sees fit to recognize the facts that the services were rendered and were valuable, and therefore ought to be paid for even

though there were no legal obligation constraining such payment, we can see no proper ground for the interference of a court of equity to prevent such action. ...... The able counsel for the appellant seeks to distinguish his case from the one cited (Bailey et al. v. Philadelphia, 167 Pa. 569) on the theory that the appointment in the present case was illegal, forbidden by the statute, nay, perhaps even a misdemeanor and from such an act no moral obligation could arise. We may concede, arguendo merely, that if the learned solicitor made an honest error of judgment in his construction of the act, no legal liability on the part of the city would be thereby created; or even that if he wilfully violated the provisions of the Act of 1906, he could be convicted of a misdemeanor under Section 24. But we can see nothing either immoral or illegal in the appointee acting on the advice and judgment of his chief, rendering services that were valuable to the city, nor in the latter subsequently recognizing the existence and the value of those services."

In Bailey v. Philadelphia, 167 Pa. 569, the Supreme Court on page 571 by Mr. Justice MITCHELL said: "The facts are not in dispute. Miss Sherry was elected by the sectional school board as supervising principal of the John Moffet Combined Grammar and Secondary School, in October, 1891, and began the performance of her duties as such on January 4, 1892. The board of education on February 10, refused to confirm her election, and on March 8, 1892, regraded the school so as to dispense with the office of supervising principal. Miss Sherry and the sectional board which had elected her, claiming that her title was complete by the election, and did not require to be confirmed by the board of education, she brought suit by mandamus to compel the board of education to certify her name on the roll of teachers to the city controller. This suit was decided against her by this

court on April 24, 1893. The councils of the city inserted in the appropriation to the board of education for 1894, an item, No. 56, to pay Miss Sherry 'the amount of salary in dispute,' but the board refusing to draw a warrant for this item it was transferred by ordinance June 18, 1894 to a new item, 8½, in the appropriation to the clerks of councils 'to pay Miss Margaret Sherry said salary.'

"This appropriation is on the face of it, to pay for services rendered. Whether it is accurately called salary or not is unimportant. . . . . . . Undoubtedly the legal claim of Miss Sherry was at an end when this ordinance was passed. She had no right which could have been enforced by action. But it does not follow that her claim was without merit. The committee of councils reported, on the contrary, after investigation, that it was founded on services rendered under claim and color of right and title, and was meritorious. Does the law prohibit the city from recognizing the moral obligation arising from these circumstances? We do not find anything that compels us to so hold. A moral obligation in law is defined as one 'which cannot be enforced by action but which is binding on the party who incurs it, in conscience and according to natural justice,' and again, a 'duty which would be enforceable by law, were it not for some positive rule which, with a view to general benefit, exempts the party in that particular instance from legal liability': 15 Am. & Eng. Ency. of Law, 716. In this state it is held that such an obligation will sustain an express promise to pay and, a fortiori, an actual payment: Hemphill v. McClimans, 24 Pa. 367; Stebbins v. Crawford Co., 92 Pa. 289; Leonard v. Duffin, 94 Pa. 218; Brooks v. Bank, 125 Pa. 394; Holden v. Banes, 140 Pa. 63; Kelly v. Eby, 141 Pa. 176. If a mere promise to pay under such circumstances would be enforced by law against an individual, certainly an actual payment, or its

equivalent, an order by the councils on their ministerial officer who has no duty in reference thereto but obedience, should be sustained against a municipal corporation. Councils it is true are trustees and the law limits their expenditure of public money to public purposes, but they are also representatives of their constituents, and delegates of the city's legislative powers, and there is nothing in the law or in sound public policy to prohibit the city from being honest, and paying its bona fide debts which are good in conscience and justice, though for sufficient other reasons, there is a general rule which prevents them from being enforceable by law."

In Commonwealth ex rel. v. Walton, 236 Pa. 220, the Supreme Court in a per curiam opinion affirmed the judgment for the reason stated in the opinion of Judge BREGY. He said on page 224: "It was decided in Bailey v. Philadelphia, 167 Pa. 569, that an ordinance that directed a warrant to be drawn in favor of a teacher who had rendered some service to the city, although not possessing the necessary certificate to entitle her to be eligible to the position she claimed, was a valid exercise of power. And this was so decided by the Supreme Court after the same court had declared her ineligible. In Justice v. Philadelphia, 37 Pa. Superior Ct. 267, the Superior Court held that, regardless of the legal propriety of a clerk's appointment, as the city had received his services the legality of the ordinance which directed him to be paid would be sustained. In neither of these cases had the plaintiff any right that could be enforced by action, and it is just that thing that councils and the mayor are authorized to act upon. It has been spoken of as a moral obligation, etc., but the better way to put it is that the law does not require the city of Philadelphia to refrain from paying for work, materials and other

services that she has received, even if the plaintiff could not force the city to pay him."

In Vare v. Walton, 236 Pa. 467, the Supreme Court also affirmed the judgment of the court below for the reason stated in the opinion of Judge Bregy. Both this case and the preceding case were mandamus cases. Judge Bregy said on page 470: "It has been said that this act relieves the city of the necessity of being dishonest and does not require it to refuse to pay for work simply because it cannot be made to pay for it by a suit at law."

The court below said: "It is a hardship to deprive the plaintiff petitioner and others in like condition of compensation for services rendered, but we are not permitted to award the salary or fees attached to a public office to one who is not the officer de jure because the law expressly prohibits such expenditures. Therefore, we must deny the relief herein sought."

This is answered by Justice v. Philadelphia, supra: "If under such circumstances, the city itself acting through its councils, sees fit to recognize the fact that the services were rendered and were valuable, and therefore ought to be paid for, even though there was no obligation constraining such payment, we can see no ground for the interference of a court of equity to prevent such action."

It would unduly lengthen this opinion to cite any additional cases on this branch of the case.

Although the appointment of the assessors may have been informal and not pursuant to the Act of Assembly then in force, there is nothing to prevent the board of assessment and revision from accepting and adopting the acts of such appointees.

The principle is correctly stated in 44 Corpus Juris, Section 2153, page 83 as follows: "Any officer assuming to bind the municipality by contract, must possess express authority for his power thus to represent the

corporation in a contractual relation, and a contract made without authority will not bind the municipality, unless, later the officer receives such express authority and then ratifies the contract, or unless the unauthorized contract is ratified by some other board or officer having authority to make it, or unless as often happens in the case of contracts made without authority in time of emergency, the subsequent conduct of the city authorities is held to constitute a ratification.''

Likewise in McQuillan on Municipal Corporations, 2nd Ed., vol. 2, par. 534, the learned author says: ''One accepting a public office or position is presumed to do so with full knowledge of the law as to salary, compensation or fees and all limitations must be strictly observed. The law which is clear to confer such right must be strictly construed against the officer and in favor of the public. Accordingly, the compensation must be fixed as the law prescribes and when not so regulated nothing can be paid. This is the general rule; however in circumstances of particular cases recovery has been sanctioned, where the services were rendered in good faith and especially in case of emergency. And this is sometimes enforced under special circumstances irrespective of the validity of the appointment. A municipal corporation may be concluded by an estoppel in pais, like a natural person. It may ratify and adopt an unauthorized appointment to office or place in the public service, and frequently its acceptance of service performed creates a liability to pay therefor.''

This power of ratification has been recognized by our own courts: See Shiloh Street, McCormick's App., 165 Pa. 386; Bell v. Waynesboro Boro., 195 Pa. 299; Southmont Boro. v. Upper Yoder Township, 284 Pa. 287. In Hamilton Ave., 48 Pa. Superior Ct. 156, our late Brother Judge PORTER discussed the theory of

ratification of unauthorized municipal contracts at some length.

The court below seems to have placed some stress on the fact that these acting assessors exercised "official discretion in assessing the property" and that that was a reason for denying compensation. In Jermyn v. City of Scranton, 186 Pa. 595, where complaint was made that the valuation of the plaintiff's property was made by a so-called assistant assessor, but who was not a legal officer for the reason that in the year when the assessment was made no such office existed, the court said on page 601: ...... (The) board of assessors of the city of Scranton made the increased assessment and it is therefor their action, no matter who report the valuations to them. If they adopted them they assumed all the responsibility for the action taken, and it is their act that is under consideration." See also Pardee v. Schuylkill County, 276 Pa. 246.

Under the Act of 1931, Section 3, it is made the duty of the board of assessment and revision "to make and have supervision of the making of all assessments ...... for taxation of county ...... purposes." While subordinate assessors may exercise discretion in making assessments, the board has complete control.

Whether or not the plaintiff is a public officer he is entitled to the relief sought, because the board of assessment and revision, as well as the salary board, chose to recognize the moral obligation to compensate him by adopting the benefit of his services and by specifically fixing his compensation.

In view of our conclusion, it is not necessary to discuss the question of the right of a taxpayer to intervene.

The assignment of error is sustained, the decree of

the court below is reversed and the writ of peremptory mandamus is directed to be issued as prayed for. Costs to be paid by appellee.